is number 17-1043, MyMedx Group, Inc. v. Musculoskeletal Transplant, Mr. Flynn. Good morning, Your Honors. May it please the Court, I would like to devote a principal amount of my time opening here on the fact that the claim construction that was proposed by the Board here, found by the Board, is unreasonable in light of the intrinsic record. And the intrinsic record, we believe, and the specification alone we submit, compels the conclusion that the construction was unreasonably broad. Why does the specification, putting aside the prosecution history, lead to that conclusion? If you look at Column 1, Lines 33-39, Your Honor, the patent says that the amnion consists of four things. The epithelium cells, the reticular fibers, the compact layer, and the fibroblast layer. And those are four layers, unquestionably exclude the spongy layer. And there is art of record that some people include the spongy layer as part of the amnion. It's not unlike, by way of a somewhat frivolous analogy, most people would probably say there are only four members of the beetle. Other people will refer to various people as a fifth beetle. I don't think you're answering the question. Where is it in the specification that it teaches removing the spongy layer? I don't see, I mean, I understand there's significant prosecution history which we have to address, but the specification standing alone, where does it say you have to remove the spongy layer? You start with the fact that the specification tells you there are only four layers of the amnion. The specification then tells you that you separate the amnion from the chorion, and the boundary of that separation is the spongy layer, and that spongy layer, the integrity of the spongy layer, is destroyed by the separation process. You have remnants of the spongy layer on the amnion side, and you have remnants of the spongy layer on the chorion side. And then at page, at column six, lines 42 to 45, you are told, and this is explicitly, that you remove blood clots and other extraneous tissue from each layer of tissue until the amniotic membrane tissue and the chorion are clean. Now, because the first part of the patent defines only four layers of the amnion, anything that isn't one of those four layers is, by definition, extraneous tissue. And that is what the inventor is making clear here. And the fact that you separate and destroy the integrity of the spongy layer means that it is, in fact, the remnants of this destruction. It is debris. And what the patent goes on to say— But the patent doesn't specifically say the spongy layer is extraneous tissue. It doesn't specifically say it's debris. This is your problem, and then your expert is all over the place on this issue. With all due respect, the expert isn't, and I can get to that. But the point is, it does not use the word spongy layer. But a person of ordinary skill in the art knows that what is left when you separate the amnion and the chorion, besides blood clots, all that's there to be removed is—the only extraneous tissue to be removed is the spongy layer. The patent goes on to refer to, at line 55 of column 6, residual debris. Now, what residual debris could there be but the leftover pieces of the spongy layer caused by the separation of the chorion and the amnion? When you look at the layers that all the textbooks provide, that's all there is to be removed. Now, this is done in a sterile environment. We're not talking about somebody's lunch crumbs left on this. Let's talk about the prosecution history. Sure. The prosecution history— What you have is a situation in which the examiner's statements are clear that the spongy layer should be removed. But I think what's missing is any amendment to the claim limiting it that way, or any clear statement by the applicant that the applicant agrees with the examiner. And in fact, at the end of the day, the applicant says, you know, without agreeing with the examiner, et cetera, et cetera. Why should that prosecution history lead to the conclusion that, under the BRI standard, the claim should be limited to a situation where the spongy layer is removed? Sure. The first answer is that the prosecution history explanation that makes clear that this debris is in fact the spongy layer was a result of an interview in which there were a number of participants from the inventor's side as well as the examiner. And when you read the results of the interview, it's very clear that's where the examiner got the notion, okay, what you mean by substantially cleaning is you're removing the spongy layer. Where is there a statement by the applicant that there's agreement with the examiner, when, at the end of the day, in the same memorandum, it says, without acquiescing in the examiner's stated rationale, blah, blah, blah. I recognize that when you're talking about the examiner's amendment, there is that language. But if you look earlier at the description of the interview, the examiner is not recounting simply his statement. He's recounting what was accepted and agreed to in the interview. And we submit that it is the interview results that make it very clear, explicitly, what was necessarily implicit in the written description already, that the only thing left to be removed was the spongy layer. Where's the language you're relying on? From the interview? It is in the appendix at page 1059. It's the second paragraph that appears. Hold on. Hold on. 1059? 1051. Excuse me. 1051 and 1059. Which page? 1059 is the interview summary. What part do you want? Sure. The paragraph that reads, applicants did point out. What page? I'm sorry. Application page 1059. Okay. It's page 60 of Exhibit 1002 from the hearing. Okay. And where do you want us to look? The second paragraph begins, applicants did point out that they were intending to claim a tissue graft wherein both the amnion and chorion layers were present, but at least a portion of the intermediate layer, naturally present between the amnion and chorion, i.e., the spongy layer, has been removed. Well, that talks about a portion of the intermediate layer. It doesn't say the whole thing. Of course. But they were claiming substantially cleaning, and that's Well, it doesn't say substantially removed. It just says a portion of the intermediate layer. I agree with that, Your Honor, and I'm going to get to another point as well. The point of that is that it is not an examiner's statement of, oh, I think what you're doing is removing the spongy layer. The examiner is documenting that the applicant said, what we're removing is the spongy layer. No, that doesn't say that. It says where at least a portion is removed. I understand that. The claim itself defines how much of it you remove. What my point is, is that that clearly discloses the applicant is Is that the best you have in terms of the applicant's account? No. I would also call Your Honor's attention to the file history and starting at page 1050 and specifically 1051. It starts at 1050, and it refers to during a follow-up conversation with Examiner Ford and the applicant's representatives. That's when the examiner recommended that they amend by resetting a product by process. And then it reads, starting at page 1050 and then going on to 1051, it was discussed that the intact amnion layer and the corian layer were isolated and substantially clean. As such, the tissue graft was substantially free from blood clots and an intermediate layer, but a small amount of blood and intermediate layer might remain in the tissue graft, as one skill in the art would understand. So you have an explicit reference in the interview to the applicant saying we're talking about the spongy layer, and we have an explicit statement in the remarks submitted by the applicant that we're talking about substantial removal of that intermediate layer. We submit that in light of those unequivocal statements in the intrinsic record, that you don't need to look at the statements of the experts. The intrinsic record provides the answer here. The evidence, in fact, that the board cited... What's your explanation of the fact that your expert was a little bit all over the place and at one point testified that when you separate these two layers, some spongy tissue is removed and some spongy tissue adheres to each one of those layers? There's no question that everybody agreed that when you destroy the spongy layer by removing it, some stays on one side, some stays on the other. Everybody agreed to that. The reason you have different... The testimony is that in effect this spongy tissue that remains affixed to each layer becomes sort of a part of that layer. No, just the opposite. The patent is clear and the file history is clear that you don't stop there, that you not only just remove the blood clots but remove the intermediate layer. You remove that extraneous tissue. That's very clear from the teaching. And the problem was caused by the fact that... Where is the... What is your expert's comment on that? The expert was comment... The two cases that are cited by the board, one was the expert simply describing the separation process, which doesn't mean that you stop there. In fact, the patent is clear that you do. The expert, in fact, testified, and this is the appendix at 3023, do you consider spongy connective tissue to be extraneous material... Hang on a second. What is it? 3023? 3023, Your Honor. This is line 16. This is Dr. Bergen. I believe so, yes. Do you consider spongy connective tissue to be extraneous material? Answer, well, this is part of what's clean. Well, you know, whether you call that extraneous or not, I think that that's kind of moot. For the purposes of washing and substantially cleaning, it includes blood clot, extraneous tissue, and some spongy connective tissue. So she specifically calls spongy tissue different than extraneous tissue? There can be other... This is what's the problem with your expert testimony. It's not clear on anything. What you just read us, does it specifically say spongy tissue is extraneous tissue? You don't need to just rely on our expert. Their expert described the spongy tissue as extraneous. In fact, their theory going... Clear. Sure. Thank you. If you look at the appendix at page 1709 and 10... Paragraph 98 on page 1709. Moreover, because the spongy layer is attached to the separated amnion and chorion loosely and unevenly, it is debris-like, wherein numerous random pieces of spongy layer dangle or hang loosely from the amnion and chorion. Paragraph 99. Given that it is debris-like and not necessary for at least certain medical applications, a POSA, a person of skill in the art, would understand that the spongy layer constitutes, quote, extraneous tissue, close quote. In such circumstances, it is my opinion that, quote, washing and substantially cleaning the amnion, comma... Isn't all of this, what you're citing to us, an explanation of why if the claim construction does include spongy, should include spongy tissue removal, that Klein still anticipates? It's not agreeing that it does. It's just saying Klein anticipates if it does. That was the legal argument was Klein anticipates. This testimony by the expert is their expert's testimony. Which is all of their – the testimony is all under headings of why Klein invalidates, right? I understand. And it's conditional. I don't think that it – she's not saying if the claim is construed in a certain way, spongy layer is extraneous tissue, but if it's proved differently, it's not spongy layer. This part of the testimony is unequivocal, unconditioned statement, drafted with the help of their lawyers, defining the spongy layer as, quote, extraneous tissue. Can you look at 1703? Sure. Paragraph 82. In the event that element D is construed to require that Washington and substantially cleaning stuff include spongy material, Klein satisfies this. And then it goes on to talk about Klein on the pages you discuss. I mean, that clearly seems to be conditional on 1703, that she's not agreeing with that construction, but it's just explaining why Klein still invalidates based upon that construction. I understand that point. But two things. One, in that written testimony, that actual explanation of what a person would understand to be extraneous tissue is not conditioned. And in her deposition, she was specifically asked, not in any condition, and this is the appendix at 4706, line 12, question, what do you mean there by, quote, extraneous tissue, close quote? Answer, so, for example, you can have dead bits of tissue attached in there. You can also have other bits of tissue that have come out in the livery stuck to the membrane. In the case you're separating, you get bits of spongy layer hanging off, for example, and then could also represent extraneous tissue. Question, are there other types of extraneous tissue? A, not that I can think of. Now, what was going on at the time. Okay, I think, Mr. Flynn, we're out of time here. We'll give you two minutes for rebuttal. Thank you. Mr. Nicodemus. Yes, sir. Good morning, Your Honor. May it please the Court. If I may first address this argument that the inventor defined amnion in the specification as not to include the spongy layer, I have two responses. One, that's incorrect, and two, even if he did, it doesn't matter. So in the background of the invention, the inventor was just giving a background of the technology of the field of endeavor. He wasn't saying, in the claims, amnion means this, or in the present invention, amnion means that, because if he did, the claims wouldn't make sense. If you look at the claims, every time the word amnion appears, if he was defining it that way, it would mean it didn't have the spongy layer. So when you separated the amnion from the chorion, nothing would be there, even though they concede that the spongy layer is there. It doesn't make sense. If there was no spongy layer to begin with, you wouldn't need a washing and cleaning step. Now, they do concede that during the separation step, there is spongy layer, and some of it goes on the chorion, some of it goes on the amnion. Now the question becomes, is that the type of material that should be cleaned? Is it debris? Is it contamination? Is it blood clots? And the answer is no to each and every one of them. They talk about Dr. Bergen. Well, isn't that residual spongy material extraneous to both the amnion and chorion layer? But that isn't what extraneous means. There's no evidence from any skilled artisan that extraneous means a separate layer. Extraneous means things... Well, what do you think that extraneous means? Just what the board said, things that can, based on Bergen's testimony, things that can compromise the safety of the grep, debris, contamination. If you look in this patent, it's all about what you have to clean. In the summary of the invention, column three, it says in the cleaning step, you clean blood clots and other contaminants. In the chemical decontamination step, in column six and seven, it says you further clean bacteria and other contamination. But it's talking about cleaning from the... From the amnion and chorion layers. From those two layers. There's no evidence in this record that spongy layer is a bacteria, it's debris. In the context of the patent, they talk about Dr. Jones. Is it your position then that the spongy layer residue is part of the amnion or chorion layer? Yes, Dr. Bergen, for a variety of reasons. Dr. Bergen said it was. Dr. Jones said many people consider it, and we submitted lots of articles and book citations, including articles and books written by my medics, where they say the spongy layer is part of the amnion. Now, I want to address for two seconds this prosecution history. I think Your Honor's point to appendix page 1059. This was the interview summary. And look what the examiner said. The examiner offered a suggestion to write a claim to distinguish over natural placenta. And she said, when you write this claim, include in it that at least a portion of the intermediate layer is removed. That's the spongy layer. And that would distinguish over natural placenta because the product would then lack the natural intermediate layer. They never wrote that claim. All they have is washing and substantially cleaning. Now, what the board did is comply with the BRI standard from top to bottom. You look to the specification. It says what to clean. Even at the final hearing, the oral argument, my medics' counsels conceded that the specification and claims make no reference to removing the spongy layer. Dr. Bergen, she was asked in the related litigation to define what extraneous tissue means because if you look in column 6, it says blood clots and other extraneous tissue. That's part of what the board relied on. They said extraneous tissue means debris and contamination. She was asked, what does it mean? In her declaration, she could have said the spongy layer. No, what she said was blood clots, what she said was remnants of tissue of various pathological states, and what she said was dead tissue. Now, my medics tries to say, well, that's all illustrative, but everybody knew what this case was about. What prevented her from saying it included the spongy layer? In the IPR proceeding, I took her deposition. I asked her about extraneous tissue. First she said, look, my medics' counsel gave me this construction that has the spongy layer removed. I have no opinion on whether it's right or not. Then I asked her, what about extraneous tissue? You know what she says? It's in our briefing. That's beyond the scope of my opinions because in the litigation, she said what it was and she didn't say it included the spongy layer. So she may have been all over the place on a lot of things, but she was right on when she was defining extraneous tissue and she didn't define it as including the spongy layer. Now, one last point I'd like to make. It's true that when Dr. Jones' declaration was talking about the spongy layer and extraneous tissue, that was the alternative obviousness argument. Those citations that they talk about, they didn't present to the board in their brief, and that's what the board has to go on, what's in your brief. What they did present is the last page of the appendix. 5343 at the final hearing. The title of this slide that they presented is that Dr. Jones agrees the spongy layer is extraneous tissue, but now look at what she testified to. Extraneous doesn't appear anywhere in there, and when I gave my rebuttal before the board, I said that. Where does she say it's extraneous tissue? None of those other citations were brought to the board's attention because they knew it was based on an alternative obviousness argument. Look what Jones said in this PowerPoint slide. Some people think it's part of the amnion, some people don't, but it's generally an intermediate layer. If it's intermediate, that doesn't mean it's debris or contamination. That doesn't mean it's something you have to clean because the specification doesn't say that. Unless your honors have any other questions, I'm finished. Thank you very much for your time. Very briefly, I'd like to address very specific three points about the characterization of the extrinsic record. First of all, my colleague said that Dr. Bergen testified in her declaration that the spongy layer was part of the amnion. That's not true. At paragraph 118, appendix 1453, and this is what's cited by the board for this proposition ironically, she says, quote, histologically, some have classified this layer as part of the amnion, while others have classified it as part of the corium. And as I submit, the inventor, Mr. Daniel, was very clear as to which side of that he was on. The second point on this that was made was that in Dr. Bergen's other statement, she listed various things like blood clots and dead tissue and did not list spongy layer. She didn't, but the sentence appears in front of EG, not IE. She was not being exclusive. She was using examples of kinds of things that could be dead tissue. The final point I want to make is going back to, and I think the most important place is the specification where the layers of the amnion, as the inventor saw them, are set out. And it is somehow suggested that he's not defining what he understands the amnion to be for purposes of his invention because it's in some background statement. It's in the background of the invention. That's the part that this occurs in, and that's the reason why the specification itself makes clear that if it's not one of those four layers, and the spongy tissue clearly isn't, it has to be extraneous tissue. Thank you. Okay. Thank you, Mr. Flynn. Thank both counsel. The case is submitted. That concludes our session for this morning. All rise. The Honorable Court is adjourned for the day today.